JAMES B. WALKER, plaintiff in error, *vs.* WILLIAM H. WHITEHEAD, defendant in error.

1. Where the Court below dismissed a case under the provisions of the Act of 13th October, 1870, for failure to file the affidavit required, that the party had paid all legal taxes due and chargeable thereon :
*Held*, That this provision of the Act of October, 1870, is constitutional,

Walker *vs.* Whitehead.

and the Legislature of the State had the power under the Constitution, to pass such laws as was deemed essential to the public welfare and is the proper arbiter of the policy of such laws. And Courts have no right to restrain by construction, the power delegated by the people in convention, to the people's representatives.

2. *Held again,* That the duty to pay legal taxes due and chargeable upon property is one of the highest duties imposed by government upon its citizens, and it is not an impairment of the obligation of contracts for the State to require payment of such taxes due thereon and prescribe the mode by which such payment shall appear, before her Courts, with their process and powers, may be used to enforce such contracts.

3. *Held again,* That if the *failure to pay legal taxes due the State or make affidavit* that they have been paid, after six months has been granted by the Legislature for that purpose, works a failure of the remedy by law to enforce contracts, such *failure of the remedy* is the legitimate result of *the failure* of the party to pay his legal tax or comply with the laws of the State, and such failure of the remedy, so invoked by the party himself, is not an impairment of his obligation of contract.

McCay, Judge, concurring :

1. The Act of October 13th, 1870, requiring all legal, taxes then due to be paid upon debts contracted prior to June 1st, 1865, before any judgment shall be had, or any levy or sale made to recover the same, and requiring the dismissal of any pending suit upon such debts, if the plaintiff, within six months after the passage of the Act, fail to file an affidavit that such legal taxes have been paid, imposes no duty upon the plaintiff inconsistent with that clause of the Constitution of the United States prohibiting any State from passing any law impairing the obligation of contracts.

2. The Act of October 13th, 1870, only requires the performance of a legal duty imposed by the laws of this State, at the date of the contract, which legal duty, if not performed at the time agreed by law, may, under section 866 of the Code, be performed at any time thereafter. And it is clearly within the power of the Legislature to impose upon the suitors in its Courts the *present performance* of said duty as a condition precedent to the use of the powers and principles of the Court for the collection of the debt, upon which the duty arises. Such penalty is not for the past failure to pay, but for the refusal to perform a present and continuing duty.

Warner, Judge, dissenting.

Constitutional law. Relief Act of 1870. Before Judge Strozier. Baker Superior Court. May Term, 1871.

In December, 1869, Walker sued Crutchfield on his promissory note for $7,219 47, dated on the 28th of March, 1864, and due on the 19th of March, 1865, on which $1,361 23 was paid on the 1st of January, 1867, and $1,200 00 on the 26th of November, 1868. At May Term, 1870, when the cause was called, defendant's counsel moved to dismiss it because the plaintiff had not filed an affidavit that he had paid all legal taxes, etc., as required by the Relief Act of 13th of October, 1870. Plaintiff's counsel objected upon the ground that said Act was void because passed after the time allowed by the Constitution for a session of the General Assembly had passed, and because it was contrary to the Constitution of the United States, in that it impaired the obligation of the contract. Further, he proposed to show that no taxes were due on said paper, because Crutchfield was of doubtful solvency, and proposed then to pay the taxes. The Court held that, as the time for filing said affidavit was expired, no excuse would avail, and dismissed the cause. This is assigned as error.

HINES & HOBBS, for plaintiff in error.

LYON, DEGRAFFENRIED & IRVIN; W. A. HAWKINS, for defendant.

LOCHRANE, Chief Justice.

The plaintiff brought his action against William H. Whitehead, in Baker Superior Court. When the case came on for trial, the Court dismissed the action, upon motion, upon the ground that the plaintiff had not filed his affidavit in relation to the payment of taxes, under the second section of the Act of October 13th, 1870, and granted an order dismissing said action, which is excepted to and forms the ground of objection in this case. It is contended that the Act in question is unconstitutional, upon the various grounds which have been argued and reargued before this Court,

Walker *vs.* Whitehead.

until the path has become beaten down, and the general authorities familiar to every Court and every lawyer. In the view which we entertain of this case, it would be a waste of time to review the list of authorities which have been presented relative to the infringement or impairment of contracts. This question has been adjudicated under the previous Acts, so far as principle and analogy may render it applicable. But I do not think that the case at bar involves any review of the principles of the decisions. The Legislature of Georgia has declared, by the Acts in question, that her Courts shall be closed to the inforcement of debts until the legal taxes, due thereon have been paid, and granted six months after the passage of such enactment, within which parties plaintiff, designing to use the processes of Court, should conform to the legal requisition made upon them. Had the State of Georgia, through her Legislature, the constitutional power to pass this Act? If she had, then the question is settled. Before expressing an opinion upon this proposition, let us first see simply what the Act is. It requires a citizen or other party, before using the processes of her Courts, to pay all the legal taxes chargeable by law upon such claims. We need not discuss the power of the Legislature. Section 5th, Article III., of the Constitution of 1868, Code, 5145, declares " the General Assembly shall have power to make all laws and ordinances consistent with this Constitution, and not repugnant to the Constitution of the United States, which they shall deem necessary and proper for the welfare of the State." This grant of power, delegated by the people in convention to the legislative branch of the government, is as broad as the limits of the State, and as comprehensive as the public interests or public welfare may demand. It is a right restrained by only two limitations : First, the Constitution of the State itself, and second, the Constitution of the United States.

By reference to the Constitution of Georgia, the power of taxation is declared to exist over the whole State, and shall

be exercised by the General Assembly. The Constitution of the United States contains no inhibition upon this exercise of the sovereign power, but it is recognized ; nor indeed could it be, in any manner, impinged. If it be then a conceded right that the State has the power to impose taxes, it follows that she may, in the wisdom and the will of the constituted authorities, provide means for their collection, and impose penalties upon all who may fail in their compliance with her legitimate demands. And a power, therefore, to impose tax and collect the same, is one which can be questioned by no authority whatever. Nor is it in the province of Courts to pass upon the wisdom of legislative Acts, or restrain their inforcement, except there be clear violation of some constitutional provision. We then come to the Constitution of the United States. Article I., section 10, contains the limitation of the powers of the individual States, and which declares, among other things, " no State shall pass any law impairing the obligation of contracts."

Does the Act in question fall within this Constitutional inhibition. The preamble to the Act declares its purpose to be " an Act to extend the lien of set-off and recoupment as against debts contracted before the first day of June, 1865, and to deny to such debts the aid of the Courts until the taxes thereon have been paid." Thus it will be seen that the declared purpose of the Act is not to interfere with the contract, whatever it may be, or to impair its obligation, but is simply, in effect, to compel parties to pay their legal taxes chargeable by law or declare the same have been paid, before the Courts of Georgia will give the benefit of its processes and powers and the use of its legal officers to enforce the contract or obligation. But it may be said that this law is cunningly devised to accomplish a different result from that which the Legislature have declared ; because the right of a State Court to dismiss suits when the legal taxes have not been paid, as an original proposition will scarcely be questioned. The United States has devised, in its wisdom, a

scheme of laws for the collection of taxes and contracts or obligations failing to bear upon their face the proper stamps. attesting the payment of such tax upon promissory notes. Its Courts will not entertain jurisdiction of such notes, and such denial of the use of the Federal Courts, its processes, powers and officers is not considered an impairment of the obligation of the contract, but arises from the fault of the plaintiff in not affixing the evidence, in the manner prescribed by the laws of the United States, to the instrument. And this general principle may be broadly asserted, that the legislative power, State or National, has the right to prescribe, not only the rules of evidence in relation to the payment of such taxes, but to direct the dismissal of such suits as may fall within the rules of evidence thus prescribed. We are accustomed to take too limited a view of the great powers which are lodged in the legislative department of the Government. While, in theory, the other departments, judicial and executive, may be co-ordinate, yet it is a fact, authenticated by history, that the people attach themselves to the Legislature as the fountain of power, whose right it is to direct the action and enlarge or limit the powers exercised by the others. The Supreme Court of the United States may adopt rules to-day which the legislative will to-morrow may revoke. And this Court, in its plenitude of power, is alike the subject of State legislation. And when the Legislature, by the Act of 1870, prescribes "that it shall be the duty of the plaintiff to file his affidavit that all legal taxes chargeable by law upon such debts or contracts have been duly paid or the income thereon for each year since the making of the same, and that he expects to prove the same upon the trial, and upon failure to file such affidavit said suit shall, on motion, be dismissed," it only laid down a rule of evidence incumbent on the plaintiff, the neglect of which accomplished the aim the law proclaimed in the dismissal of his action. And this rule is in consonance with other subject matters of legislation equally prescribed by the Legislature, equally im-

perative, equally arbitrary and equally disastrous, if not complied with. Case after case, involving great legal rights, a few Courts ago were dismissed by this Court for non-compliance with one of its rules, and to-day failure to file a bill of exceptions in proper form or in proper time, or to furnish the Court with copies or briefs would be visited with equally disastrous consequences. Mistakes of pleading or misconception of duty would entail the same result. In a word, the Legislature prescribes the machinery of the Courts, and when, in motion, they are governed by the arbitrary regulations of of the sovereign, as to the times of holding them, the mode and manner of bringing actions, the time within which they must be brought, the rules of evidence governing them, and the technicalities of form in which they must be presented. And we might here remark, as a part of the remedy not involving the obligation of the contract, great and substantial changes have been made in the judiciary system of our State which we recognize as beneficial in their operation and results, since this class of contracts was entered into. Much has been said in the argument as to the character of this legislation as against the policy of the Federal Constitution, which we do not deem called upon to decide. By reference to the power of the General Assembly, we find that they are invested with power to make such laws as they deem necessary and proper for the welfare of the State.

As to what should be to the welfare of the State, they are the exclusive judges. Nor is this a new power found in the constitutional charter of 1868, but is found in her other Constitutions, and belongs to a series of legislative Acts, commencing with the great revolution through which she passed, and exhibiting in each successive legislation a design to protect the people in the little that had been left from the ravages of war, and equalize the disasters which fell so thick and heavy, after the storm had subsided. In its inception it was a question of proper and legitimate public policy for the Legislature to look over the wreck and ruin, the disasters

and devastations which had accrued, and interpose the legislative power against the exactions and cormorancy of some who, armed by the processes of the Courts and the machinery of her ministerial officers, would have plunged the unfortunate victims of the war still deeper in a sea of trouble.   To legislate for the public welfare, which was a constitutional duty of the Legislature, involved not only a dry administration of the legislative duty, but invoked their highest degree of statesmanship.   With singular and felicitious unanimity, they and their successors have proudly endeavored to preserve the public welfare and protect the individual victims, and we see nothing in this last Act, now under review, more exceptional to the legitimate powers, exercised under the Constitution, than may be found in the legislation of the Ordinance of 1865, which has been held by this Court to be Constitutional.   In *Slaughter vs. Culpepper*, 35 Georgia, 27, this Court, in construing the second section of the Ordinance of 1865, and in reply to the argument that this Ordinance was violative of that prohibition in the Constitution of the United States which forbids any State from passing any law impairing the obligation of contracts, said " we cannot think this clause of the Ordinance obnoxious to the objection ; it does no more really, than change a rule regulating the admission of testimony in Courts of law   *   *   *   *   *
Who is prepared to deny that the Legislature may not, at its discretion, alter and amend old rules of evidence and establish new?   Who, that it may not obliterate all distinctions which now characterize modes of procedure in Courts of law and Courts of equity, and to command, if they so enact, that the broad and liberal principles upon which justice is administered, on the equity side of our Superior Courts, shall apply to and control the verdicts of the juries on its law side?"   And we may add, who is prepared to deny that the Legislature of the State of Georgia, within its legitimate power, may not demand the payment of legal taxes due to it, before its Courts shall be used for the enforce-

ment of such contracts upon which legal taxes are due and chargeable, and to grant time within which such taxes shall be paid, and prescribe the mode by which such facts will appear? Back of 1865 we find the same principle of the public welfare finding its enactment in stay-laws and various other laws intended to protect the unfortunate debtor from the exigences by which he was surrounded.

This series of legislative enactments have, from the commencement, no where purported to impair the obligation of contracts, but simply to add new rules of evidence by which the new defenses, growing out of the war and its concomitants, might be pleaded and established by proof. The condition in which the State was plunged after the war, invoked the same legislation for the public welfare which was so universally conceded to exist during the war. Every species of tangible property had mingled with the general ruin. Slavery, the basis of nearly all credits, had been extinguished. Millions of dollars worth of other property had been destroyed. The production of cotton had been prohibited by law; the barns and smokehouses were made contributory to the Confederate commissary, and what was left from failure of transportation was consumed by exiles from the borders. The currency of the United States was prohibited circulation, and nothing was left untouched save the evidences of debt, which had been regarded worthless while the storm was raging, but came to life with the restoration of peace, and which, by legal enforcement, would have left the State a republic of paupers. We think that the legislation was not only proper, but demanded by the public welfare, and exhibited the wisdom of the Legislature, and should be sustained by the Court in all its efforts, in the granting of remedies to protect the people from overwhelming ruin. And, except constrained by the most imperative duty to restrict its exercise by the constitutional prohibition of the United States referred to, it should be, on grounds of constitutional right and policy, sustained. And in the case

at bar, we have no doubt of the right of the Legislature to deny processes and powers of its own Courts to all parties who have failed to pay the legal taxes due and chargeable, and have failed to comply with the rules of evidence prescribed by the Legislature in filing affidavits, in 'conformity to the second section of the Act of October 13th, 1870, and affirm the judgment of the Court below in dismissing such action upon such grounds. There was no other mode prescribed to bring up the issue. The requisition of the Legislature was legal under our Code.

These defaulting taxes ought to have been paid to the Comptroller General, and the party should have made affidavit as prescribed by the statute, and upon his failure to do so and filing an affidavit to that effect, in terms of the Act, it was the duty of the Court to have dismissed his case.

Nothing can be clearer than the fact recognized by the Legislature, that the contract subsisting between the parties shall remain untouched. There is not a word of the Act impairing the contract, nor is the remedy provided by law for its enforcement denied. Both the obligation and the remedy are distinctly left as they existed, nor is any unreasonable burden imposed upon the party. The duty to pay tax is one of the higest duties of citizenship known to the law. Taxes are necessary to the administration of the Government, and when any class of men evade their payment, the act is not only *disloyal*, but imposes on others a higher taxation than is their just share of obligation to the Government. We do not see why any plaintiff or owner of a *note* should complain of the requisition upon him for the legal taxes due and chargeable thereon. If he has paid it, then he is entitled to his contract and the remedy of its enforcement. But if he has not why should the State open its Courts to one who has confessedly failed to pay his legal taxes? It has the sovereign right to prevent his voting until he pays his tax. Cannot the same power prevent the use of its Courts? But it is said it is *ex post facto.* By reference to the law we find

no new taxes imposed by it, and no forfeiture of the contract is declared for their non-payment. And again, ample time, six months, is allowed within which to comply with the law.

Upon consideration, we hold that the State of Georgia has the constitutional right to close her Courts against those who have failed to pay their legal taxes to the State upon such property or contracts which she may prescribe, and upon which taxes have been imposed, and prescribe the mode by which such fact may be attested.

And for these reasons, we affirm the judgment of the Court below.

McCAY, Judge, concurring.

1. The objections made to this statute seem to me to be based upon an entire misconception of its meaning. It is assumed that the Act imposes upon the creditor some new duty, inconsistent with the terms of his contract and not required of him at its date, or that it puts upon him a new penalty for a past failure of duty. It is argued that the former imposition impairs the obligation of the contract, and that the latter, imposing a new penalty for a past failure of duty, is an *ex post facto* law.

But this is a perversion of the meaning of the Act. No new tax is laid, no new obligation is imposed. The taxes required to be paid are the legal taxes *already incurred*, under the ordinary and usual revenue laws of the State, which have been of force long prior to the date of the contract. The only new duty imposed is the duty of showing that these taxes have been paid, of making an affidavit and filing it, that this public duty has been performed. Is *this such* a new imposition as impairs the obligation of the contract? I think not. It is admitted, in all the decisions upon this clause of the Constitution, that the States still retain their powers over the remedies they furnish for the enforcement of contracts. They may not, it is true, use this power so as to

destroy or materially interfere with the right. But can it with any propriety be said that the requirement of an affidavit by the plaintiff that he has complied with the duty imposed upon him, of paying the ordinary and usual taxes assessed by law on the debt, is such an onerous burden as impairs the obligation of the contract? It must be remembered that the taxes required to be paid are not new taxes, but taxes arising and falling due under laws in force long before the date of the contract; and the affidavit required is simply that these taxes have been paid. How does this differ from the United States law requiring notes offered in evidence to be stamped before they are admitted? or the law requiring every writ or process sued out to have a stamp upon it? How does it differ from the law requiring bail-writs, distress-warrants, attachments, garnishments, and proceedings to enforce liens, to be preceded by an affidavit of the truth of the claim, and sometimes by a bond for costs and damages? How does it differ from the provision of our new Constitution, that the defendant shall not have a trial by jury, on his plea, unless that plea be verified by his affidavit? No Court, even the most extreme upon this subject, has ever yet held that the admitted power of the States over the remedy does not include such requirements as these. They have nothing to do with the contract of the parties; they are regulations provided by the State for public purposes, for the prevention of injustice, for the collection of the revenue, for for the orderly and proper proceedings of the Courts, and to subserve the public weal.

If it so happen that the party required to perform them fail, and an advantage thereby comes to his adversary, that is no fault of the law, but the fault of the party who has failed in the performance of his duty. Such results often happen in the course of judicial proceedings. Pleas of usury, gambling pleas and pleas setting up that contracts are illegal, as contrary to law, are allowed, not for the benefit of the defendant. Indeed, it often happens that the Court which

allows the plea feels and expresses indignation at the repudiation by the defendant of his contract, after he has received the consideration of it, yet, on grounds of public policy, they are bound to admit the plea. So under this law, the State, for its own purposes, assesses the tax, requires the plaintiff to furnish evidence of its payment, makes it the duty of the Court, without plea by the defendant, to require the evidence to be forthcoming. If an advantage comes to the defendant by reason of the plaintiff's failure to comply with this reasonable, easy and equitable public duty, it is only that incidental advantage which is common in all cases where the plaintiff fails to comply with the regulations prescribed by law, for the proceedings before the Courts.

Nor is there anything in the objection that this Act only applies to a certain class of tax-payers, and to certain specified debts. We have special laws about agents, bailees, trustees, debts over six years old, debts by fraud, debts in writing, and different regulations as to each. Special evils require special laws. It is notorious that, though our laws have long assessed a tax on debts, notes, etc., the tax has been evaded. The property is easily hid; the tax receiver has no means of unearthing it; and by the management of the holder of the debt, it escapes the public burders. The amount of debts given in last year was only $26,000,000 00, against over $100,000,000 00 in 1860. It is, besides, well known—and this was a motive for the Act we are discussing —that debts contracted before the 1st of June, 1865, were specially kept back from the tax book. Is the Legislature confined to but one mode of getting at the taxable property of the country? If men possess a species of property easily concealed, and hide it in their safes, so that the public officers cannot assess it, can it be complained that the Legislature, knowing that this property *must* come to light when the Courts are asked to enforce it, shall provide that, before this will be done, evidence shall be afforded that the tax has been paid? Nor is this affidavit burdensome and unconstitutional

Walker vs. Whitehead.

because it requires men to swear they have not committed a crime. It does not do this. It requires them to swear that they have performed a certain duty growing out of the very debts they are asking the public to enforce. They may be required to swear they have paid all legal taxes before they are permitted to vote, and, for thirty years, it has been the law, that, before one can take a commission as a public officer, he must swear he is not the holder of any public monies. These, as well as this requirement, are nothing but the rights and proper use of the public privileges and honors, to force those seeking to enjoy them, to perform, as a condition precedent, the duties due the public.

2. Nor does this Act impose any penalty for past acts. The taxes it requires to be paid are *now* due. That they were due five, four, three and two years ago, and have gone unpaid, is no relaxation of the obligation to pay them. Can it be contended that, because one in 1866 or 1868 managed to conceal his taxable property, he is thereby released from his obligation to pay the tax thereon when he finds it no longer possible to hide it, because it has become necessary to ask the public to aid him in a certain use he proposes to make of it? I think not. The tax required by law to be paid in 1865, 1866, 1867, etc., if it was not paid when it was required, is still due, and it is perfectly competent for the Legislature to take any legitimate mode to enforce the payment. It would be a strange thing if the public can take no other methods of collecting debts due it, except such as existed at the time the debts were incurred. Nothing is better settled than that the Legislature may give, even to a private individual, a better remedy for his debt than was in existence at the date of the debt. And should the public be held to be confined in its remedies to such only as existed when the debts accrued?

As I have said, these taxes are just as much due now as they were in the year they were incurred. They are a present, subsisting, legal obligation and if the remedies provided

at the time have proved inadequate to enforce their payment, the State may take any new remedy that may suggest itself. It cannot, I admit, enact that, *inasmuch* as the holder of this class of debts has not paid the tax, *therefore* he shall not use the Courts for the enforcement of them. That would be a penalty for his past failure, and would be *ex post facto*. But this Act does no such thing. It assumes, and properly, that their taxes, *if* not paid, are *now* due, and provides that the plaintiff shall not proceed *until* he pays them or makes an affidavit that he has paid them. He can pay them at *any time* before he proceeds. As to his right to bring suit, or to levy and sell, there is even no limitation as to time. So far as this Act is concerned, he may put off the payment at his option, until he proposes to move. If the suit be pending he must act in six months, or his suit will be dismissed. He has full time granted him within which to act, and the penalty is not for failing last year or five years ago, but for failing *now*. The duty to pay exists *now*, it is a continuing, present obligation and duty, just as imperative to-day as it was last year. The 866th section of the Code provides how taxes for previous years shall be given in and paid, and one who to-day fails to give in and pay taxes upon property not given in and paid in former years, fails in *a present duty*, and it is perfectly competent to affix a penalty on him, not for his past, but for his present and future failures.

Any one may escape the penalties of this law by paying the tax and making the affidavit as required by the statute, except that if he has allowed the six months to slip with this duty, still unperformed, his pending suit must go by the board.

For myself, I think this is a wise law, and that it ought to be made general as to all debts. I am inclined to think it is almost the only way by which to bring this class of men up to the full performance of their public duty. Why should they not pay to the public this legal subsisting, reasonable claim upon them? Why should they not make the affidavit

Walker *vs.* Whitehead.

required? If no taxes are due, if they have been paid, it is a very simple thing so to swear. If they have not been paid, it is nothing but right that they should now be paid. Even if the suit has been dismissed, or is, by the neglect to file the affidavit required within six months, the party is in such *laches* as that it is the duty of the Court to dismiss it, the *debt* is still in existence; the *dismissal* is no bar. The tax may yet be paid, the suit be again brought, with the affidavit attached. *This Act* makes no denial of any remedy, except on the *continued* failure of the plaintiff to pay the *legal* taxes he owes the public. I fear the real objection is, that there is no intent to pay the tax. It has been kept back so long that it seems like a new tax. Perhaps the doubling process of the law, long in force in Georgia, by which taxes upon property not returned get bigger and bigger, each year, may have something to do with it. Of this I know nothing. I simply insist, that it is nothing but right that the class of men who call for Courts, and witnesses, and jurors, and thus put the public to expense, shall, as the law requires, pay their share. If they have neglected to do it, let them do it now. If they do, this law does not hurt them, except in the case of a pending suit. In that case, they had six months within which to act. If they have seen fit to let the time go by, it is their own fault, and they must take the consequences.

WARNER, Judge, dissenting.

This was an action brought by the plaintiff against the defendant, on a promissory note, dated 28th of March, 1864, on which there is due the sum of $4,658 24, besides interest. When the case was called on the docket in the Court below, the defendant's counsel made a motion to dismiss it, on the ground that the plaintiff had not filed an affidavit that all legal taxes chargeable by law had been duly paid on said debt, in accordance with the provisions of an Act of the General Assembly, passed on the 13th of October, 1870, deny-

ing to plaintiffs the aid of the Courts to collect debts contracted before the first of June, 1865, until the taxes thereon have been paid. The Court sustained the motion and dismissed the case, and the plaintiff excepted. My opinion in regard to this class of legislative enactments, have been repeatedly expressed, and this Act is quite as obnoxious to the fundamental law of the land, as any of the others; it imposes *conditions* on the legal rights of the plaintiff, which did not exist at the the time the contract was made; is *ex post facto* in its character, inasmuch as it *assumes* that a particular class of the citizens of the State are guilty of a criminal offense, and *outlaws* them from the enforcement of their legal rights in the Courts; *invades* the legal rights of the plaintiff under the contract at the time it was made, and impairs the legal obligation thereof, within the true intent and meaning of the prohibition contained in the 10th section of the 1st Article of the Constitution of the United States, and is, therefore, void.