AYCOCK *v.* STATE *ex rel.* BOYKIN, solicitor-general, *et al.*

No. 12018.   OCTOBER 4, 1937.

*R. Emerson Gardner,* for plaintiff in error.

*John A. Boykin,* solicitor-general, *J. C. Savage, C. S. Winn, Bond Almand, Sumter M. Kelley, Spalding, Sibley, Troutman & Brock, M. J. Yeomans,* attorney-general, *O. H. Dukes, E. J. Clower, M. L. Allison, W. H. Duckworth, D. M. Parker, E. G. Arnall,* and *J. C. Murphy,* contra.

ATKINSON, Presiding Justice. As stated in the brief of the plaintiff in error: "The issues of law embodied in the assignments of error are as follows: (1) Was the provision of article 13 of the constitution of Georgia, requiring amendments thereto to be voted on at the 'next general election,' complied with? Stated differently, was the election of June 8, 1937, a general election within the intent and meaning of said provision? (2) If the election held on June 8, 1937, was such an election as was contemplated by article 13 of the constitution of Georgia, did the proposed amendment repeal the following provision of paragraph 1, section 7 of article 7 of the constitution of ·Georgia: 'and no such county, municipality, or division shall incur any new debt, except for a temporary loan or loans, to supply casual deficiencies of revenue not exceeding one fifth of one per centum of the assessed value of the taxable property therein, without the assent of two thirds of the qualified voters thereof voting at an election for that purpose to be held as prescribed by law.' "

The entire brief of the plaintiff in error is devoted to a discussion of these two questions. Consequently the case will be dealt with only in so far as relates to these questions. In article 7, section 7, paragraph 1, of the constitution adopted in 1877, it is declared: "The debt hereafter incurred by any county, municipal corporation, or political division of this State, except as in this constitution provided for, shall never exceed seven per centum of the assessed value of all the taxable property therein, and no such county, municipality or division shall incur any new debt, except for a temporary loan or loans, to supply casual deficiencies of revenue, not to exceed one fifth of one per centum of the assessed value of the taxable property therein, without the assent of two thirds of the qualified voters thereof, voting at an election for that purpose to be held as prescribed by law; . . But any city the debt of which does not exceed seven per centum of the assessed value of the taxable property at the time of the adoption of this constitution may be authorized by law to increase at any time the amount of said debt three per centum upon such assessed valuation." This has several times been amended, as mentioned in an editorial note to § 2-5501 of the Code of 1933. The substance of the amendments is not material to the questions now involved, and will not be stated.

■ By act of the legislature approved March 29, 1937 (Ga. L. 1937, p. 13), it was proposed to further amend this provision of the constitution so that the "City of Atlanta may issue refunding serial bonds not in excess of the aggregate sum of $2,000,-000.00, for the purpose of refunding and retiring any bonded indebtedness of said city outstanding, past due and unpaid on January 1, 1937, and any bonded indebtedness of said city outstanding and which becomes due up to and including January 1, 1938, and provide for the assessment and collection of an annual tax, sufficient in amount to pay the principal and interest of said bonds as they fall due; the proceeds of all such refunding bonds so issued by the City of Atlanta to be used exclusively for the purpose of paying and retiring said bonded indebtedness that is or may become due and unpaid as of January 1, 1938. Said refunding bonds shall be issued when authorized by a vote of the mayor and general council, and shall be validated." The proposal went further so as to embrace references to temporary loans and certain debt certificates which need not be set forth. It also provided for submission of the question of ratification of the proposed amendments to the people at the "next general election." In article 13, section 1, paragraph 1, of the constitution (Code, § 2-8601) it is declared: "Any amendment or amendments to this constitution may be proposed in the Senate or House of Representatives; and if the same shall be agreed to by two thirds of the members elected to each of the two houses, such proposed amendment or amendments shall be entered on their journals, with the yeas and nays taken thereon. And the General Assembly shall cause such amendment or amendments to be published in one or more newspapers in each Congressional District, for two months previous to the time of holding the next general election, and shall also provide for a submission of such proposed amendment or amendments to the people at said next general election; and if the people shall ratify such amendment or amendments, by a majority of the electors qualified to vote for members of the General Assembly, voting thereon, such amendment or amendments shall become a part of this constitution. When more than one amendment is submitted at the same time, they shall be so submitted as to enable the electors to vote on each amendment separately."

It is contended that the above-quoted proposed amendment did

not become effective as a part of the constitution, because it was not submitted to the people at the next general election. The proposed amendment was in fact submitted to the people at an election held on June 8, 1937, the time at which no provision was made by the legislature before 1937 for the holding of a general election in this State. But during that year, by act approved February 24, 1937 (Ga. L. 1937, p. 712), it was declared: "1. . . In addition to the general election created under and by virtue of an act approved August 14, 1914 (Acts 1914, pp. 47-48), there is hereby created and established a State-wide general election to be known as the June general election, which shall be held biennially on Tuesday after the first Monday in June, beginning on the above date in 1937, which election shall be held in the same manner, with the same formality, and in accordance with all rules and regulations in existence in holding the November general election, and which June general election shall be held in every county and every militia district therein in the State, for the purposes hereinafter specified in detail in this act. Section 2. . . . The June general election herein created is hereby designated as being the election in which vacancies shall be filled in any and all State and county offices, which vacancies may have occurred by reason of the death or resignation of the incumbent or nominee therefor, or otherwise, since the last preceding general election, except that special elections to fill vacancies may still be held under and pursuant to chapter 34-17 of the 1933 Code of Georgia, whenever such special election may be more expedient, and may best serve the interests of the State or any county thereof, by filling any such vacancy at an earlier date than is provided for in this section. Section 3. . . At the June general election herein created there shall be submitted to the qualified voters of the State, for ratification or rejection, any and all constitutional amendments to the constitution of Georgia, and any and all referendums which may have been enacted and proposed by the General Assembly of Georgia at any session of such General Assembly since the last November general election, and preceding such June general election; provided that sufficient time between enactment by the General Assembly and approval by the Governor, and the date of holding the June general election, exists in which to advertise such constitutional amendment, or amendments, or referendum, as provided by law."

It is urged by the plaintiff in error that the election thus provided for was not a "general election" within the meaning of the above-quoted provision of article 13, section 1, paragraph 1, of the constitution (Code, § 2-8601), but was merely a special election not authorized by the constitution. The constitution does not define the term "general election," but in using that term contemplates general elections provided for by legislative enactment. The legislature can enact what the Federal and State constitutions do not prohibit. As to this, see *Boston* v. *Cummins*, 16 *Ga.* 102 (19) (60 Am. D. 714); *Walker* v. *Whitehead*, 43 *Ga.* 538. In *Moore* v. *Smith*, 140 *Ga.* 854 (79 S. E. 1116), the question of ratification of a proposed amendment to the constitution, creating the County of Wheeler, was submitted at the November election. It was held: "The election for members of Congress and presidential electors, required by law to be held on Tuesday after the first Monday in November, is a general election within the meaning of article 13, section 1, paragraph 1, of the constitution of this State." In the opinion it was said: "The question raised is whether the November election is a 'general election' within the meaning of article 13, section 1, paragraph 1, of the constitution. Before the adoption of the constitution of 1877 the constitution of 1868 declared, 'This constitution may be amended by a two-thirds vote of two successive legislatures, and by a submission of the amendment to the qualified voters for final ratification.' In that instance the constitution did not specify how a proposed amendment to the constitution should be submitted to the people, or the kind of election at which the question should be submitted. Those matters were left open to be dealt with by the legislature. Under that constitution the question of the adoption of the amendment might have been submitted to the voters of the State at a special election regularly provided for that purpose by the legislature, or at any general election as the legislators might see fit to direct. When the constitutional convention of 1877 dealt with the same matter, there was a material departure, in that a proposed amendment was not required to be voted for at two successive sessions of the legislature, and, additionally, to be submitted to the voters of the State at any election; but the requirement was that the proposed amendment should receive a specified vote at one session of the legislature, and that the pro-

posed amendment should be submitted to the voters at 'the next general election.' In 1868 and in 1877 the conventions, upon adjournment, were to go out of existence. The necessity for possible amendments to the constitution then being adopted was in the mind of the members of the convention, who had been elected by the people, and in each instance it was deemed proper to make provision for such amendment without another convention; but in doing so care was taken that no amendment should be made without being submitted to the voters of the State for ratification. As indicated above, in 1868 the time and manner of submitting the question was not specified in that constitution, but in 1877 it was. In the latter constitution it was to be submitted at the next general election. The term 'general election' was not defined, but that term, as employed, evidently contemplated an election to be held at a fixed time after a specified notice at which all the qualified voters of the State should have an opportunity to express their choice on the question of ratification of the amendment. Owing to the gravity of the question to be voted on, a full expression of the voters was desired. If submitted at a 'general election' after notice to the people as provided, the tendency would be to have a fuller vote than at a special election where the only question to be voted on was that of the adoption of the amendment. Other consistent reasons might be suggested for providing that the question should be voted on at a general election. The designation of the 'next' general election was merely to fix the time for submission to the voters, taking into consideration the existing conditions. When the constitution of 1877 was adopted, the act approved August 20, 1872 (Acts 1872, p. 29), was in effect. By this act it was provided, that elections for members of Congress and presidential electors should be held biennially on Tuesday after the first Monday in November; that elections for county officers should be held on the first Wednesday in January of the years in which, under the constitution and laws of the State, elections should be held to fill such offices; and lastly, that elections for all other officers of this State should be held on the first Wednesday in October. Each of the three classes of elections mentioned was required to be held on the same day in each county of the State, and the qualification for voters was the same for all of them. Each election, therefore, was a general election

throughout the State, and all voters qualified to vote at them were qualified to vote on the adoption of the constitutional amendment. Proper submission to the voters of the State was the object sought. That object could be accomplished in any one of the three elections above mentioned, which might happen to occur at a time when it was practicable to publish the notice required. The elections were all State elections, and no reason appears why the question of ratification should not be submitted at one class as well as another. There was no fixed date at which a proposed amendment might be submitted, and what might be the 'next general election' after the adoption and approval of the act, occurring at a time when the notice could be given, would be indefinite. It could be one or the other of the three general elections. Under these circumstances, the framers of the constitution, without attempting to specify one class of the elections rather than the other, merely provided that the question should be submitted at the 'next general election' occurring at a time when the notice of the submission of the proposed amendment to the constitution could be duly published."

The three elections mentioned in that case were provided for by legislative enactment in force at the time of the adoption of the constitution of 1877. But this is insufficient to require a construction of the constitution that would prevent its application to statutes enacted in the future providing for the holding of general elections. Statutes of that character were not involved in the *Moore* case, and consequently nothing was said as to statutes enacted in the future. But if such had been involved, it would have been proper to hold that elections held under such statutes were general elections within the meaning of the constitution. The prime object of submitting the question is to afford all the legal qualified voters of the State opportunity to express their choice on the question of ratification. Where future enactment provides for this result, the constitution should not be construed as denying effect to the enactment merely because it was adopted after the constitution. The three elections mentioned in the *Moore* case were elections for persons to offices of various kinds as mentioned in the opinion; whereas the elections provided for in the act now in question are (a) for elections of persons to fill vacancies in offices, and (b) to submit the question of ratification of proposed

amendments in relation to impersonal measures. That was the character of the question submitted at the election involved in *Moore* v. *Smith,* supra, the question being as to ratification of a proposed amendment to the constitution creating the County of Wheeler. Any difference in the statutes as to election of officers for unexpired terms is not sufficient to prevent the election from being a general election within the meaning of the constitution. In the light of what has been said, the election held under the provisions of the above quoted act is a general election within the meaning of the constitution.

■ The provisions of article 7, section 7, paragraph 1, of the constitution (Code, § 2-5501) would inhibit the City of Atlanta from incurring the bonded indebtedness involved in this case, "without the assent of two thirds of the qualified voters thereof, voting at an election for that purpose to be held as prescribed by law." This refers to a local election. The proposed amendment to the constitution voted for at the June, 1937, election, and duly ratified as a part of the constitution, declares in its concluding words: "Said refunding bonds shall be issued when authorized by a vote of the mayor and general council, and shall be validated." This part of the amendment, in so far as relates to the particular bonds described therein, modifies the above-quoted provision of article 7, section 7, paragraph 1, of the constitution to the extent that a local election shall not be required, but in lieu thereof the issue of the bonds may be authorized "by a vote of the mayor and general council."

Under application of the principles ruled in the foregoing syllabus and opinion, the judge did not err, for any reason assigned, in overruling the objections to the validation of the bonds, and in dismissing the intervention.

*Judgment affirmed. All the Justices concur.*