AUGUSTUS H. LEE, plaintiff in error, *vs.* WILLIAM W. CLARK, executor, defendant in error.

When A filed a bill in equity against C's administrator, alleging that he (A) and B had, during the late war, traded lands; that B was at the time indebted to C for a part of the purchase money of the land, but C was refusing Confederate money, so that the debt could not be paid; that for this reason A only gave to B his bond for titles to the land he let him have; that B afterwards traded the land he got of complainant to D and transferred the bond; that shortly after this,

Lee *vs.* Clark.

complainant received a message from C, then in life, that he might safely make a deed to D, as he (C) was now willing to take Confederate money from B for his debt; that knowing positively that B had the money and was ready to pay, he, (A) in consequence of this message, made titles to D and took up his bond ; that he is informed that B soon after tendered the Confederate money to C, who refused it ; that C had died, and his administrator, the defendant, was proceeding to levy his judgment, which was a judgment on the foreclosure of a mortgage on the land.   The bill prayed a perpetual injunction against the mortgage, and a temporary injunction until the trial.   The Court granted the temporary injunction.   C's administrator, the defendant, answered the bill, denying, on his information and belief, the sending of the message and the tender of Confederate money, and moved to dissolve the injunction and to dismiss the bill for want of equity.   The Court dissolved the injunction and dismissed the bill:

*Held*, 1. That as the statements of the bill, on which its equity depends, were not stated as in the complainant's own knowledge, and was not supported by any affidavits of their truth, the Court did not err in dissolving the injunction.

2. That there is equity in the bill, for which complainant has no remedy at law, and that it was error to dismiss the bill.

WARNER, Chief Justice, dissented.

Equity.   Injunction.   Before Judge GREENE.   Newton county.   At Chambers.   July 4th, 1872.

Lee filed his bill against Clark, as the executor of William D. Conyers, deceased, containing substantially the following allegations:

Complainant and one Turner Horton each owned tracts of land in Newton county.   They agreed to exchange.   Before this contract was executed, Horton informed complainant that he purchased his land from William W. Clark; that a portion of the purchase money was still unpaid, and that Clark had transferred his claim to the same to William D. Conyers. Under these circumstances, complainant declined to execute a deed to Horton to his (complainant's) land, but instead thereof, made and delivered to him a receipt, in the nature of a bond for title, conditioned to execute a title deed so soon as the balance of the purchase money due upon the land for which he had contracted, should be paid.   Complainant, knowing that Horton was, at the time, amply able to discharge said liability,

Lee vs. Clark.

accepted his deed to the land for which he was exchanging, and went into possession of the same. Shortly after the execution of the aforesaid receipt by complainant, Horton traded the lands specified therein to Lewis Zachary and transferred to him said receipt. Complainant has been informed and believes, and so states, that the difficulty in reference to the payment of the balance of the purchase money was, that Conyers would not accept from Horton in payment thereof what was then the only currency of the State, viz: Confederate treasury notes. Subsequently to this, complainant received a message from Conyers, that he would accept from Horton Confederate money in payment of the said claim, and that he (complainant) might safely execute a deed to Zachary, to whom Horton had transferred the receipt as aforesaid. Relying upon this promise, and knowing that Horton had the money on hand, and that he had been exceedingly anxious to pay off said balance, complainant, without hesitation, executed and delivered to said Zachary a deed to said lands, and took up and destroyed the aforesaid receipt. Complainant has been informed and believes, and so states, that immediately after he had executed the deed as aforesaid, said Horton tendered to said Conyers Confederate money sufficient to pay off and satisfy the balance of said unpaid purchase money on the lands conveyed to complainant. He believed that the whole matter had been settled, and never heard anything to the contrary until October 29th, 1868, when he received a notice from the sheriff of Newton county that he had levied a mortgage execution, in favor of William W. Clark against Turner Horton, which had been transferred to William D. Conyers, upon the lands conveyed to complainant by said Horton. On investigation, complainant discovered that there was such a mortgage on record, bearing date December 3d, 1859, and covering the premises described; that a petition for foreclosure was filed at the March term, 1860, of Newton Superior Court, and at the next succeeding term a rule absolute issued. Complainant would never have executed a title to Zachary to the lands conveyed by him, but for the assurances of Conyers, upon the

faith of which he acted.    The mortgage execution has no entry thereon from the third day of October, 1860, the date of its issue, to the ninth day of October, 1869.    Complainant has filed his claim to said property, and the case will be pressed to trial at the next term of Newton Superior Court by Clark, as executor of Conyers, unless restrained by an order of this Court.    Prayer, that the defendant be enjoined from-the further prosecution of said levy and from pressing said claim case to trial until the further order of the Court; that said mortgage execution may, by decree, be perpetually enjoined from proceeding against the property of complainant; that the writ of injunction may issue.

The Chancellor sanctioned the bill and the writ of injunction issued.

The answer of the defendant, on his information and belief, denies that Conyers ever sent any message to complainant that he would receive Confederate money for the balance of the purchase money due on the land; denies that Horton ever tendered to Conyers Confederate money in payment thereof; denies that Conyers ever declined to receive Confederate money in payment.

The defendant moved to dissolve the injunction and to dismiss the bill.    The Court sustained both motions, and complainant excepted, and now assigns said ruling as error.

J. J. FLOYD, for plaintiff in error.

CLARK & PACE, by PEEPLES & HOWELL, for defendant.

McCAY, Judge.

1. There was no error in dissolving this injunction.    This Court, in the case of *Jones et al. vs. Macon & Brunswick Railroad*, 39 *Georgia*, 138, has held that to justify the use of this extraordinary writ the statements of the complainant must be positive, and within his own knowledge, or if he cannot say this, but relies on information and belief, he must bring with him the sworn statements of those who do know.    And this

Lee *vs.* Clark.

is only a reasonable and proper requirement. The whole equity of this bill turns upon the message received by the complainant from Dr. Conyers. The bill does not say this message was sent by Conyers within the personal knowledge of the complainant. Indeed the inference is rather to the contrary. This brings the case within the decision referred to, and the injunction ought never to have been granted without other evidence.

2. But we are clear there is equity in the bill. It alleges that the complainant received a message from Dr. Conyers that he might safely make the deed, as he would take Confederate money from Horton; that as he knew Horton had the money, and was anxious to pay it, he did make the deed. True, it is not stated positively that Dr. Conyers sent the message, nor is any precise date stated. But the other facts stated show when the exchange of lands was made, and it is said this occurred shortly after. As to the want of a positive statement, that it is true, is a good reason why the temporary injunction should not be granted. But does that make the bill subject to demurrer? The demurrer admits as true all that is stated. It therefore admits that complainant "received a message" from Dr. Conyers as stated. Could he have received the message if it had not been sent. If I say I received a message from A, and he comes into Court and admits I did so, does he not admit that he sent it? And if it be proven on the trial that complainant did receive such a message from Dr. Conyers, no jury would hesitate to decree on that proof, since it is impossible that he should receive such a message unless it was sent. If such a message was sent to complainant by Dr. Conyers, and complainant received it and acted on it, we think that discharged the lien of the mortgage. Nor is there on *this* contract (for a contract it is, if the facts be proven, since it was a proposition of one, on which the other acted to his own hurt,) any remedy at law. With this contract Horton had nothing to do. As to him Conyers might repudiate it, but as to complainant he could not, since he had acted on it, and put himself in a new and not so good

a position.  He has no remedy against anybody on this contract, except the very remedy he asks, to-wit, the release of his land from this lien.

We think, therefore, there was equity in the bill, and the Court erred in dismissing it.

Judgment reversed.

TRIPPE, Judge, concurred, but furnished no opinion.

WARNER, Chief Justice, dissenting.

This was a bill filed by the complainant against the defendant, praying for an injunction to restrain the sale of certain described tracts of land under a mortgage *fi. fa.* which had been levied thereon.  The injunction prayed for was granted, and afterwards, a motion was made on the filing of defendant's answer, to dismiss the complainant's bill for want of equity, and to dissolve the injunction.  On the hearing of this motion the Court sustained the demurrer to the complainant's bill, and dismissed it, whereupon, the complainant excepted.  The alleged grounds of equity in complainant's bill are, that he was the owner of a settlement of land in Newton county, known as the Hammock, Gill and Corly place; that one Turner Horton was the owner of a settlement of land in said county, known as the Whatly place; that on the ...... day of ......, 18..., the complainant and Horton agreed to exchange the aforesaid settlements of land; but before the deeds were executed, Horton informed complainant that he had purchased his settlement of land from Clark, and that a part of the purchase money due therefor was unpaid; that Clark had transferred his claim to the money due therefor to Dr. Conyers, then in life, but now dead; complainant then declined to execute a title to Horton for his settlement of land, but instead thereof, executed to him a receipt in the nature of a bond for title, conditioned to make a title when the unpaid purchase money due for the land should be paid by Horton.  Complainant taking a deed from Horton for his settlement of land, knowing, as complainant alleges, that

Lee *vs.* Clark.

said Horton was fully able to meet and discharge said liability for the unpaid purchase money, went into the possession of the land, and has continued in the possession of the same up to the present time. Shortly after the complainant had executed and delivered his bond for title, as before stated, to Horton, the latter sold the land described therein to Zachary, and transferred to him his said bond for title. The reason why the purchase money had not been paid by Horton for the land, the complainant states from information and belief, was that Conyers was unwilling to take Confederate money for the debt, but complainant believed he had protected himself by retaining the title in himself to the land sold to Horton until the purchase money for the land bought by him from Horton should be paid. Complainant alleges that, sometime about the ...... day of ......, in the year 1860, he received a message from Conyers that he would receive from Horton Confederate money in payment of said claim, and that he, complainant, might safely execute a deed for the land to Zachary, which he had sold to Horton, and which the latter had sold to Zachary; that relying on this message from Conyers, and knowing that Horton had the money in hand and was anxious to pay it, he did, on the ...... day of......, 18..., execute a deed for the land to Zachary and took up his bond for title, and complainant has been informed and believes, that immediately after he had executed the deed for the land to Zachary, Horton tendered to Conyers Confederate money sufficient to pay the principal and interest due on the aforesaid claim, and complainant believed the whole matter was settled until the 29th day of October, 1868, when he was notified that the sheriff had levied a mortgage *fi. fa.* on the land, which mortgage had been given by Horton to secure the payment of the purchase money for the land, and had been duly recorded.

Such are, substantially, the allegations in the complainant's bill. If the allegation in the bill is to be literally construed, that the message from Conyers that he would take Confederate money was received by the complainant in 1860, then it was before Confederate money was issued; but if it was in-

tended to mean that it was in 1860, 1861, 1862, 1863, 1864, or 1865, or in some one of those years, then the time is too uncertain and indefinite, because it would be much more improbable that Conyers would have sent a message that he would take Confederate money in 1864 or in 1865, than in 1862 or in 1863. But there is no allegation that he refused to take the Confederate money when Horton tendered it to him at any time. Who the messenger was is not stated, whether white or colored, male or female, and it is a significant fact, that the affidavit of that messenger was not produced on the motion to dissolve the injunction; but after all, the complainant's allegations only amount to this, that *somebody* told him, at *sometime*, that Conyers would take Confederate money for Horton's mortgage debt, and that he might safely execute a deed to Zachary. Whether Conyers ever told anybody that he would do so, we do not know, and to charge Conyers, after his death, with having discharged his mortgage lien on Horton's land, upon the mere say-so of a nameless messenger, would be without a precedent in the history of judicial proceedings. The allegation that the complainant received the message from Conyers, as stated in the bill, necessarily implies that he must have received it through a messenger; in other words, that messenger told the complainant what Conyers said, but that nameless messenger may not have told the truth in relation to the matter, and Conyers would not be bound because that messenger told the complainant he had sent such a message. As to Conyers, it was only the declaration of some third person; as to the complainant, it was only hearsay evidence, and nothing more, especially as the complainant does not allege that he believed it to be true. The allegation that the complainant received the message *from Conyers*, necessarily depends on the fact that the nameless messenger told him so. In other words, I received the message *from Conyers* because the nameless messenger said so, or told me so, and that is all that allegation.

Besides, this mortgage debt due by Horton for the purchase money of the land sold by him to the complainant, was an

incumbrance on the land at the time of the sale, and there is nothing in the bill which goes to show that the complainant has not an ample common law remedy on his deed from Horton to him for the land—no charge of *insolvency* on the part of Horton.   If the complainant chose to act upon the information of this nameless messenger, which he does not even allege he believed to be true, without inquiry of Conyers as to the *truth* of his statements, and make a deed to Zachary, it was his own fault, and a Court of equity will not assist him, the more especially as he has his remedy on Horton's deed to him, if the land purchased from Horton should be made subject to the payment of the mortgage debt.   Horton is the real party interested to have the mortgage lien removed from the land, instead of the complainant.   The allegations in the complainant's bill are to be construed most strongly against him, especially when the process of injunction is prayed for, and if he cannot recollect as to the time when material transactions took place, the Court will not recollect it for him.

The demurrer to the bill only admits such facts as, in the judgment of the law, would entitle the complainant to the relief which he seeks.   Would the allegations in the complainant's bill, if proved at the hearing as therein set forth, entitle him to a decree setting aside and canceling Conyers' mortgage lien on Horton's land?   If they would, then the injunction should have been retained, but if they would not, and, in my judgment, they would not, then there was no error in the Court below in sustaining the demurrer, and dismissing the complainant's bill for want of equity.