## COMPTON *v.* HIX.

No. 11831. September 16, 1937. Rehearing denied October 16, 1937.

Lamar C. Rucker, Carlisle Cobb, Clarence E. Adams, Herman Talmadge, and Linton Johnson, for plaintiff in error.

Erwin & Nix and R. Howard Gordon, contra.

Atkinson, Justice. W. H. Compton was the duly elected and qualified commissioner of roads and revenues of Madison County for the term commencing January 1, 1933. On November 3, 1936, he was re-elected to succeed himself for the next term commencing January 1, 1937. After re-election he failed to file an official bond on or before January 1, 1937. On January 6, 1937, no bond having been filed and no commission delivered to Compton, the ordinary passed a formal order declaring the office vacant, and on the same day appointed William F. Hix, who immediately filed bond and took the oath of office. Hix as claimant to the office, and also as a citizen and taxpayer, instituted quo warranto proceedings to oust Compton and obtain the office. The respondent filed a general demurrer and an answer. The court overruled the demurrer, but submitted the case to the jury to pass upon issues of fact. At the conclusion of the evidence a verdict for the relator was directed. In a bill of exceptions presented by the respondent error was assigned upon the judgment overruling the demurrer, and upon the direction of the verdict.

· ■ The act of 1914 (Ga. Laws 1914, p. 316), creating the office of commissioner of roads and revenues for the County of Madison, as amended by the act of 1916 (Ga. Laws 1916, p. 462), provides in part: "That at the regular election for the county officers, . . said commissioner of roads and revenues shall be elected for the term of four years, whose term of office shall begin on the first day of January, 1917, and who shall serve for a term of four years and until his successor is elected and qualified. That in all subsequent elections after the passage of this act, said term of office of said commissioner of roads and revenues shall be for the term of four years, and until his successor is elected and qualified." In section 4 of said act of 1914, it is declared: "That the commissioner elected, as herein provided, shall be commissioned by the Governor for the term of office for which he is elected, and before entering upon the discharge of his duties shall subscribe to the oath before the ordinary of said county required by law for county officers, and shall give bond with good security, to be approved by the ordinary of said county, payable to the Governor of the State and his successors in office, in the sum of five thousand ($5000) dollars, conditional for the faithful performance of his duties as such commissioner, which bond, when approved by said ordinary, shall be by him recorded in the record of official bonds kept by him in his office." Under these laws the office of commissioner so created is a legislative office as distinguished from an office created by the constitution.

■ "Official bonds of all officers who are entitled to commissions from the Governor, and who are required to give bonds, shall be prepared and furnished by the Executive Department at the time of forwarding the dedimus potestatem." Code, § 89-403. "All county officers shall have until the first day of January next after the election to file their several bonds as required by law." § 89-408. "No public officer required by law to give bond shall perform any official act before his bond is approved and filed as required." § 89-410. "Any public officer, required by law to give bond, who shall perform any official act before his bond is approved and filed as required, shall be guilty of a misdemeanor." § 89-9902. "All offices in the State shall be vacated—1. By the death of the incumbent. . . 6. By failing to apply for and obtain commissions or certificates, or by failing to qualify or give

bond, or both, within the time prescribed by the laws and constitution." § 89-501. "Should a vacancy occur in said office by death, resignation, or otherwise, the same shall be filled by appointment by the ordinary of said county." Georgia Laws 1914, p. 316, sec. 2. The several provisions of the act of 1914 creating the office of commissioner of roads and revenues in the County of Madison, as amended by the above-mentioned act of 1916, are to be considered together and in connection with the above provisions of the general law quoted from the Code. Under application of the several statutes considered together, and giving effect to the provision quoted from the Code, § 89-501(6), where an election for commissioner is held on November 3, 1936, at which an incumbent is re-elected to such office, it is his duty to file his official bond with the ordinary on or before January 1, 1937, and upon his failure to do so, by his own fault, a vacancy in the office will result. *Ross* v. *Williamson,* 44 *Ga.* 501 (2). The case differs from the case of *Pitlman* v. *Ingram,* 184 *Ga.* 255 (190 S. E. 794), in which the office in question was created by the constitution, the provisions of which fixed the term and tenure of office which could not be modified by statute. The case differs also from *Shackelford* v. *West,* 138 *Ga.* 159, and *Cason* v. *Harn,* 161 *Ga.* 366 (supra), and similar cases, which, though dealing with statutory offices, did not involve application of the Code, § 89-501(6), declaring vacancy for failure to file an official bond. The judge did not err in overruling the general demurrer to the petition for quo warranto.

■ On the trial uncontradicted evidence was submitted, substantially as follows: The respondent was re-elected commissioner, November 3. On December 6 he made application for an official bond through a local agent of a surety company, who was also his attorney. The company was surety on his old bond. Nothing was heard from the company by the respondent or his attorney during the month of December. No information came to him from any source that there was any question about the bond or the time of filing it. He saw his attorney almost daily and asked about the bond, and was told that he had heard nothing. On December 18 the ordinary informed respondent that his oath and commission had been received, and he could get his commission when he wished to qualify. On December 26 respondent

called on the ordinary for his commission, and was informed that he would have to file his bond before receiving his commission. He stated to the ordinary that he hoped his bond would be there in a day or two, and that when his bond came he would apply for his commission, and that "he was depending on him," to which the ordinary replied, "All right." Aside from the inquiry by respondent of the local agent about the bond, as indicated above, nothing appears to have been done by the respondent in the procurement of a bond until after January 1. On January 4 the ordinary called at the office of respondent, and was informed that no communication had come from the surety company concerning the bond. On the morning of January 5 the respondent called at the office of the ordinary, and was informed of "the importance of giving the bond right away." Respondent stated in reply, "that his bond had not come, and that he would go to Atlanta to see about it, and that if he could not get the surety company bond he would be back on the night of January 5, 1937, and secure a personal bond on January 6, 1937, and the ordinary replied, 'That is all right.'" Respondent proceeded to the office of the surety company in Atlanta, "and was informed by the agent that his bond had been held up, awaiting some information." Respondent furnished "the information requested, and thereupon the agent executed the bond." Respondent was detained in Atlanta on official business for the county, but notified his wife, and the clerk in his office, that he had his bond and would be at home the next day. This information was communicated to the ordinary about 7:15 o'clock the next morning, who replied, "All right." After 8 o'clock the ordinary called the attorney and asked about the bond, and the attorney repeated the message that had been sent by respondent from Atlanta. The ordinary then stated that he had told respondent to see him on the night of January 5. At 11 o'clock on January 6 the ordinary passed a formal order declaring a vacancy in the office on account of the failure of the respondent to file an official bond on or before January 1, and, after passing that order, entered an order appointing the relator to the office. The relator immediately gave bond and took the oath of office. About 5:45 p. m. of the same day the attorney tendered bond to the ordinary, and again on January 30 respondent and his attorney called at the office of the

ordinary and tendered his bond, which tenders were refused, the ordinary stating that they came after a vacancy had been declared.

In *Ross* v. *Williamson*, supra, it was held: "The simple fact that an officer elect does not give his bond and take the oath of office within the time prescribed by law is not sufficient to work a forfeiture of his right to the office; it must appear that the not giving the bond and taking the oath within the time was by the fault or failure of the officer." In the opinion it was said: "It is said, in section 126 of the Code, that an office is vacated if the person elect fail to qualify and give bond within the time prescribed by law. We are clear, however, that this means a failure, that it only applies to cases when the officer is in fault. The simple statement that the oath was not taken and the bond filed within the time is not, in our judgment, sufficient. The Code, section 143, in regulating the time within which such bonds shall be filed, fixes it at so many days from the election, etc. But this has never been literally construed. In many of the counties, the shortest time mentioned here (twenty days) would most frequently be consumed in getting the returns to the capital and returning the commission to the ordinary. It often happens that the election is contested, sometimes the mail fails, sometimes the commissions lie in the office through fault of the ordinary. An experience of many years, as a county officer, informs me that the practice generally has been to notify officers that their commissions have arrived, and it has not been usual to consider the office vacant until this notice has been given; and this upon the idea that the officer has not failed until he has notice that the ordinary is ready, prepared by the presence in his office of the commission, to take the bond and administer the oath. See the case of *Bassel* v. *The Governor*, 11 *Georgia Reports*, 207. We think, for these reasons, that the statement made in the answer that the petitioner had not taken the oath and given the bond within the time prescribed by law is not sufficient, that it ought to have further set forth that this was by his default." Section 126 of the Code referred to in the foregoing excerpt is the same as § 89-501 (6) of the Code of 1933, quoted above. It is mandatory and must be given effect, notwithstanding the hard consequences to the officer elect whose duty to the public was to give bond. Applying the statute, as thus construed, and above quoted provisions of the

act of 1914 as amended by the act of 1916, taken in connection with the several quoted provisions of the Code, to the evidence, how stands the case? It was incumbent on the respondent as a county officer elect (*Malone* v. *Minchew,* 170 *Ga.* 687-690, 153 S. E. 773) to file an official bond with the ordinary on or before January 1, 1937. If he failed to do so through his fault, a vacancy would result, in virtue of the Code, § 89-501(6). He knew all this as matter of law. He had been told by the ordinary, on December 18, that his commission was ready for delivery. He knew as matter of fact, on January 1, and at all times before, that he did not have a bond which he could file; nor did he procure one until several days after the time the law required a bond to be filed. He had applied for a bond on December 6, through his attorney who was agent for a surety company, and had heard nothing from the company until after January 1; nor had he done anything, further than to inquire of the attorney (the local agent of the company) "almost daily . . what about the bond?" who "told him that he had heard nothing." When the respondent allowed January 1 to pass, knowing that he did not even have a bond that could be filed as required by law, his failure to file a bond within the prescribed time was necessarily his fault within the meaning of that term as employed in *Ross* v. *Williamson,* supra. In the circumstances, failure to file an official bond within time resulted in a vacancy immediately after January 1, 1937. After the vacancy the ordinary was authorized to appoint a successor to fill the vacancy. The fact that the judge had submitted the case to a jury because the answer of the respondent raised issues of fact did not deprive him of power to direct a verdict, where such verdict was demanded by uncontradicted evidence submitted at the trial. Under the pleadings and the evidence, the judge did not err in directing the verdict for the relator.

*Judgment affirmed. All the Justices concur, except Hutcheson, J., who dissents, and Beck, P. J., and Bell, J., absent because of illness.*