MITCHELL *v.* PITTMAN.

No. 12001. NOVEMBER 1, 1937. REHEARING DENIED DECEMBER 4, 1937.

D. W. *Mitchell, Hardin & McCamy, Smith, Smith & Blood-worth, W. E. Mann, W. G. Mann, L. T. Mann, Paul H. Field, C. H. Dalton, S. R. Maddox, C. D. & F. K. McCutchen, M. L. Harris, J. M. C. Townsend, G. Roy Climer, John S. Wood, R. Noel Steed, Y. A. Henderson, J. M. Lang,* and *Henry L. Barnett,* for plaintiff.

*Wright & Covington, Neel & Ault, G. E. Maddox, Matthews & Owens, R. Carter Pittman, Finley & Henson, Paul F. Akin, W. T. Townsend, R. V. Jones, F. A. Bray, J. G. B. Erwin,* and *F. A. Cantrell,* for defendant.

RUSSELL, Chief Justice.   The bill of exceptions which brought this case before the Supreme Court was filed as a writ of error to a judgment rendered by his Honor, John D. Humphries, who, in a proceeding in the nature of a writ of quo warranto, refused to oust his Honor, Claude C. Pittman, from the office of judge of the superior courts of the Cherokee Circuit.   Judge Pittman was elected judge of the Cherokee Circuit in November, 1932, for the constitutional term of four years and until his successor should qualify.   In 1936 in the usual preliminary Democratic primary election he was opposed by Mr. James A. McFarland, who defeated Judge Pittman for renomination.   In consequence, at the general election in November, 1936, Mr. McFarland was elected judge for the next succeeding term, without opposition.   He died on November 25, 1936, without qualifying by taking the oath prescribed by law and without having received a commission; and the question arose whether there was a vacancy in the office of judge of the superior courts of the Cherokee Circuit.   Governor Talmadge, on January 4, 1937, appointed William A. Ingram, under the provisions of art. 6, sec. 3, par. 3, of the constitution (Code,

§ 2-3103), to hold office until the next general election to be held under the constitutional provision in November, 1938. Ingram filed a proceeding in the nature of a writ of quo warranto against Pittman, who being disqualified, the case was referred to Judge J. H. Hawkins of the Blue Ridge Circuit, who in my opinion rendered a correct judgment, awarding the office to Ingram and ousting Pittman. Pittman carried this judgment by writ of error to the Supreme Court, where the majority of the court reversed the judgment, holding that there was no vacancy in the office of judge of the Cherokee Circuit. *Pittman* v. *Ingram,* 184 *Ga.* 255 (190 S. E. 794). But the writer dissented from that judgment, and is still of the opinion that there was a vacancy which the Governor was required to fill by the appointment of a judge to hold until the first of January subsequent to the general election in November, 1938. Had Judge Hawkins's decision been affirmed, it is certain the present case would not be before the court. The way is open to me now to say that the reversal being only the opinion of four Justices, I am not bound by it. But I shall not avoid the issue now presented to the court as to whether there was such an election on June 8, 1937, as could constitutionally provide one entitled to hold the office of judge of the superior court. The decision in the *Ingram* case is not, in a strictly technical sense, res adjudicata between Mitchell and Pittman, the parties in this case; but I am of the opinion that the principles of substantive law upon which Judge Humphries based his decision would properly have been controlling if the proceedings before him related to a circuit other than the Cherokee Circuit, and if the parties were Smith, relator, against Jones, respondent. The writer, who dissented upon the ground that a vacancy did actually exist which authorized the appointment by the Governor to fill such vacancy, though not juridically bound by the decision on that point, in the Pittman-Ingram case, finds himself in the position of the dove who was first sent from the ark by Noah and had to return because it could find no place upon which to alight (Gen. 8 ch. 9), since the plaintiff in this case contends that there was a vacancy which could be filled by popular election at a time different from that which I believe is prescribed by the constitution of 1877. While the decision in *Shackelford* v. *West,* 138 *Ga.* 159 (74 S. E. 1079), did not refer to a constitutional office such as judge of the

superior court, but referred to a statutory judge of the city court of Athens, where it was provided that the judge of the city court should hold office for four years and "until his successor is qualified," Judge Evans said: "The term of the city-court judge is fixed at four years certain, with a contingent extension. When this contingency happens, this extension is just as much a part of the term as the antecedent fixed term." In the instant case, there being no vacancy, there could be no successor to Judge Pittman except by election, and the constitution provides when such election shall take place, as follows: "The successors to the present and subsequent incumbents *shall be elected* by the electors entitled to vote for members of the General Assembly of the whole State, at the general election held for such members, next preceding the expiration of their respective terms." Art. 6, sec. 3, par. 2 (Code, § 2-3102). The fact that he is still holding office does not prevent any such election. He can become a candidate, but the election thus provided by the constitution must be a general election at which members of the General Assembly are to be voted for. It follows that a judge of the superior court could not have been elected at the June election provided under the act of February, 1937.

In his judgment Judge Humphries held: "Aside from constitutional provisions regarding the election of judges of the superior courts, it is not to be overlooked that at the time of the passage of the act of February 24, 1937, there was no vacancy in the office of judge of the superior courts of the Cherokee Circuit, as has already been held by the Supreme Court in the case of *Pittman* v. *Ingram,* supra, and no vacancy existed at the time of the election of June 8. Whatever rights Judge Pittman may have in and to that office, they existed prior to the passage of the act referred to. There is no occasion to assume that if the act of February 24, 1937, does not apply to the election of a judge of the superior courts, it would mean that Judge Pittman could hold that office indefinitely. It is not necessary to decide in this case whether an election for that purpose can be held at the general election in November, 1938. The constitution provides for the quadrennial elections for judges of the superior courts, and such an election for the Cherokee Circuit must be had at the general November election in 1940, whether or not one can be had at the general election

in 1938." Upon the precise constitutional question involved in this case, Judge Humphries said: "When a vacancy occurs, as contemplated under article 6, section 3, paragraph 3, of the constitution, it must be filled by appointment of the Governor 'until the first day of January after the general election held next after the expiration of thirty days from the time such vacancy occurs, at which election a successor for the unexpired term shall be elected.' What general election would satisfy that provision of the constitution? The election held quadrennially on the first Saturday in December, for justices of the peace and constables, is a general election, and might be the one occurring 'next after the expiration of thirty days from the time such vacancy' occurred. Does the constitution contemplate that in that event a judge of the superior courts should be elected at that time to fill a vacancy arising in that office? The act of February 24, 1937 (Acts 1937, p. 712), 'created a State-wide general election to be known as the June general election,' to be held biennially on Tuesday after the first Monday in June, beginning in 1937, to fill vacancies in any and all State and county offices which 'may have occurred by reason of the death or resignation of the incumbent or nominee therefor, or otherwise, since the last preceding general election;' and to submit to the qualified voters of the State for ratification or rejection 'any and all constitutional amendments to the constitution of Georgia, and any and all referendums which may have been enacted and proposed by the General Assembly.' It is altogether possible that a time for holding said June election might come when there would be no proposed constitutional amendment or referendum to be voted upon, and no vacancy in any State office except that of a judge of the superior courts. Does the constitution contemplate that a judge of the superior courts should be elected to fill a vacancy under those circumstances? Quoting article 6, section 3, paragraphs 1, 2, and 3, of the constitution, Justice Atkinson, speaking for the majority of the Supreme Court in the case of *Pittman* v. *Ingram,* supra, said: 'These provisions of the constitution are fundamental and controlling. They rank above all legislative or executive powers in relation to the subject to which they refer. They constitute the entire provisions of the constitution as to terms and tenure of office of judges of the superior courts.' The general elections therein referred to are the

November general elections, and they apply alike to elections to fill vacancies and elections in the first instance. The constitution has prescribed that special method of electing judges of the superior courts, and it must be followed so long as the constitution remains unchanged in that respect. If the constitution should no longer conform to the will of the people in respect to the election of judges of the superior court, the remedy would be to amend it. That could be done easily if the people should so desire. . . Counsel for relator has argued that inasmuch as the constitution is silent as to a situation like that existing in the Cherokee Circuit, the court should hold that the General Assembly had authority to and by the act of February 24, 1937, did deal with that situation. If that contention were sound, it would necessarily follow that the legislature might as well have called a special election for a judge of that circuit. The court can not agree with that contention."

The case of *Compton* v. *Hix,* 184 *Ga.* 749 (193 S. E. 252), involved the title to the office of county commissioner of Madison County, a statutory and not a constitutional office, and is not in point. The case of *Moore* v. *Smith,* 140 *Ga.* 854 (79 S. E. 1116), involved the vote on a constitutional amendment providing for the creation of the County of Wheeler, and this election was not under the provisions of art. 6, sec. 3, par. 2, of the constitution, requiring that the voters be "the electors entitled to vote for members of the General Assembly of the whole State at the general election held for such members." The same distinction is true as to the case of *Aycock* v. *State ex rel. Boykin,* 184 *Ga.* 709 (193 S. E. 264).

The opinion of Judge Humphries so nearly conforms to the rulings of the majority of this court in the *Ingram* case, supra, as to the principles of law applicable to the case at bar, that we adopt without comment those portions which we have quoted herein as part of this opinion, and consequently hold that the legislature was without authority to provide for the election of a judge of the superior court at any time other than at one of the biennial November elections provided by the constitution of 1877.

ATKINSON, Presiding Justice. This is a quo warranto proceeding in which John C. Mitchell sues to oust Claude C. Pittman from the office of judge of the superior courts of the Cherokee Circuit. The case is substantially as follows: Pittman was the

duly elected and qualified judge for the term commencing January 1, 1933. At the general election in November, 1936, at which members of the General Assembly of Georgia were elected, James A. McFarland was elected to succeed him. McFarland was due to qualify and receive a commission for a term commencing January 1, 1937. But he failed to do so, having died after his election and prior to January 1, 1937, without having taken the oath of office. On January 4, 1937, the Governor passed an executive order declaring a vacancy in the office, and on the same day appointed William A. Ingram as judge to fill the vacancy. Judge Pittman continued from and after January 1, 1937, to hold the office and perform the duties in the usual way. Ingram instituted quo warranto proceedings to oust him, and prevailed in the trial court. Pittman brought the case to the Supreme Court; and the judgment was reversed, this court holding that under the constitution and laws as applied to the facts a vacancy did not exist, and that the appointment of Ingram was unauthorized and ineffective. *Pittman* v. *Ingram,* 184 *Ga.* 255 (190 S. E. 794). On February 24, 1937, an act of the General Assembly was approved which provided for the holding of "a State-wide general election to be known as the June general election, which shall be held biennially on Tuesday after the first Monday in June." The act provided for submission for ratification of legislative proposals to amend the constitution, and for elections "in which vacancies shall be filled in any and all State and county offices, which vacancies may have occurred by reason of the death or resignation of the incumbent or nominee therefor, or otherwise, since the last preceding general election." Ga. L. 1937, p. 712. On June 8, 1937, a State-wide election was held under this act, at which legislative proposals to amend the constitution were voted upon. At this election the name of John C. Mitchell appeared as candidate for judge of the superior courts of the Cherokee Circuit. He received the requisite vote, qualified for the office, and received a commission from the Governor "for the unexpired term of four years which began on January 1, 1937." Pittman still continued to hold in virtue of his term commencing January 1, 1933, and to perform the duties of the office. Mitchell, in virtue of his election and commission in 1937, instituted quo warranto proceedings to oust Pittman from the office. The trial court sustained a de-

murrer and dismissed the petition. Mitchell excepted. The ultimate question is which of the two has title to the office. In *Pittman* v. *Ingram,* supra, this court held that in circumstances substantially as stated above a vacancy did not exist, and that the executive appointment was ineffective. It was said in the opinion:

"The constitution of this State contains the following: 'There shall be a judge of the superior courts for each judicial circuit, whose term of office shall be four years, and until his successor is qualified.' Art. 6, sec. 3, par. 1 (Code, § 2-3101). 'The successors to the present and subsequent incumbents shall be elected by the electors entitled to vote for members of the General Assembly of the whole State, at the general election held for such members, next preceding the expiration of their respective terms.' Art. 6, sec. 3, par. 2 (§ 2-3102). 'The terms of the judges to be elected under the constitution, except to fill vacancies, shall begin on the first day of January after their elections. Every vacancy occasioned by death, resignation, or other causes shall be filled by appointment of the Governor until the first day of January after the general election held next after the expiration of thirty days from the time such vacancy occurs, at which election a successor for the unexpired term shall be elected.' Art. 6, sec. 3, par. 3 (§ 2-3103). These provisions of the constitution are fundamental and controlling. They rank above all legislative or executive powers in relation to the subject to which they refer. They constitute the entire provisions of the constitution as to selection and tenure of office of judges of the superior courts. Formerly the judges were elected by the legislature, under art. 6, sec. 12, par. 1, of the constitution of 1877. McElreath on the Constitution, 380. This provision was so changed by adoption of an amendment proposed by act of the legislature (Ga. L. 1897, p. 16) as to make the judges elective by qualified voters, as stated above. The constitution as thus amended has not been changed. The constitutional design to fill the offices of judges of the superior courts by vote of the qualified electors must be carried in mind. It is distinctive from executive function, and manifests a policy to select the judges by the electorate. This object should also be borne in mind. When a person has been elected judge for a full term and has qualified by taking the oath and receiving his commission, he becomes judge '*whose term of office* shall be four

years, *and until his successor is qualified.*' By these plain words the term of the electorate's choice for judge continues during the prescribed four years and thereafter 'until his successor is qualified.' This tenure of office is beyond the reach of the executive department of government, and can not be interrupted by the Governor while it endures. This provision of the constitution can not be taken out by mere legislative act or by construction; nor can it be obviated by executive order. It must be given effect. If during such term of a judge in commission a vacancy occurs 'by death, resignation, or otherwise,' the vacancy 'shall be filled by appointment of the Governor until the first day of January after the general election held next after the expiration of thirty days from the time such vacancy occurs, at which election a successor for the unexpired term shall be elected.' This power of executive appointment is for an emergency, and can be exercised only in case of a vacancy. It can not be exercised to be effective while a duly commissioned incumbent is in office.

"It has been said: 'The office is not vacant so long as it is supplied, in the manner provided by the constitution or law, with an incumbent who is legally qualified to exercise the powers and perform the duties which pertain to it;' and 'the mere expiration of the term of the incumbent does not create a vacancy.' *Shackelford* v. *West*, 138 *Ga.* 159 (74 S. E. 1079). See *Gormley* v. *Taylor*, 44 *Ga.* 76. It was said in another case: 'All officers of this State must discharge the duties of their office until their successors are commissioned and qualified. Civil Code (1910), § 261. Where the legislature creates an office and provides for the election of an officer to fill it for a given term of years, the incumbent will hold over and beyond the fixed term until his successor is elected, qualified, and commissioned. *Walker* v. *Ferrill*, 58 *Ga.* 512; *Smith* v. *Meador*, 74 *Ga.* 416 (58 Am. R. 438); *Roby* v. *State*, 74 *Ga.* 812. The office does not expire at the expiration of said term, but the elected officer holds over until his successor is commissioned and qualified. Holding over prevents vacancy.' *Stephenson* v. *Powell*, 169 *Ga.* 406 (150 S. E. 641). . . Under the foregoing authorities, and especially the decisions in *Gormley* v. *Taylor*, and *Shackelford* v. *West*, supra, the word 'successor' in the phrase 'until his successor is qualified' must be construed to mean a successor chosen according to 'the regular method;' and

at the present time the regular method of selecting judges of the superior court is election by the people. In the instant case Judge Pittman was the duly commissioned incumbent whose term would extend to January 1, 1937, 'and until his successor qualified.' In the general election held in November, 1936, James A. McFarland was duly elected to succeed Judge Pittman, but died before January 1, without having qualified by taking the oath and receiving a commission. After his death the Governor, on January 4, while Judge Pittman was occupying and performing the duties of the office, by executive order declared a vacancy to exist, and appointed William A. Ingram as his successor. In these circumstances the election of James A. McFarland was ineffective by reason of his death before he qualified by taking the oath of office and receiving a commission. He never became judge. The fact of his election did not cause a vacancy in the term of Judge Pittman. The appointment of Judge Ingram by the Governor when there was no vacancy was unauthorized."

The case of *Mitchell* v. *Pittman,* now under consideration, does not involve executive appointment, but does involve the questions as to whether there was a vacancy in the office of judge, and of the effect of the election under the act of 1937 (Ga. Laws, 1937, p. 712), supra, and whether Judge Pittman's term which commenced on January 1, 1933, still continues. Upon these questions the foregoing excerpt from the opinion in *Pittman* v. *Ingram* is pertinent. In this connection it is not amiss to quote further from *Shackelford* v. *West,* supra, where it was said: "The term of the city-court judge is fixed at four years certain, with a contingent extension. When this contingency happens, this extension is just as much a part of the term as the antecedent fixed term." This was said with reference to a provision for a term of "four years" in a statute creating the office, taken in connection with the provision of the general law (Code, § 89-105) that all officers of this State must "discharge the duties of their offices until their successors are commissioned and qualified." The principle stated in that opinion is all the more applicable in the instant case, where the *constitution* declares that the term of the judge of the superior court shall be "four years, and until his successor is qualified." The situation in the *Pittman* v. *Ingram* case was not different from what it would have been if, on account of providence, war,

pestilence, or other cause, an election should not have been held in November as provided by statute. Judge Pittman continuing to hold after January 1st, his term of office would continue until an election should be held as provided for by the constitution, and a successor elected and qualified. The statute of 1937 (Ga. L. 1937, p. 712) could not change the terms of office of judges of the superior courts as fixed by the constitution, nor did it attempt to do so. It did not specifically mention such offices, nor do more in relation to offices generally than to authorize elections to fill vacancies for unexpired terms. Although it provided for the holding of general elections, as ruled in the recent case of *Aycock* v. *State ex rel. Boykin*, 184 *Ga.* 709 (supra), it provided only for such elections for specified purposes, which did not include elections for office except to fill *vacancies,* nor did it provide for general elections for members of the General Assembly within the meaning of article 6, section 3, paragraph 2, of the constitution (Code, § 2-3102), supra, providing that elections of judges of the superior courts shall be "by the electors entitled to vote for members of the General Assembly of the whole State, *at the general election held for such members* [italics ours], next preceding the expiration of their respective terms." As pointed out above, there was no vacancy to fill, and the election was not a general election for election of members of the General Assembly. Consequently the election for judge of the superior court was not authorized, and the executive commission issued to Mitchell, based on his selection at the unauthorized election for such office, was without constitutional authority and was ineffective. This conclusion is in no sense based on the theory that a proper election could not be held for a successor of Judge Pittman during his term. On the contrary the provision of the constitution last quoted expressly provides for the holding of elections for successors during the terms of incumbents, to take effect on the ensuing January 1st. The case also differs from *Moore* v. *Smith,* 140 *Ga.* 854 (supra), which did not involve the question of election of a successor to a judge of the superior court; and from *Compton* v. *Hix,* 184 *Ga.* 749 (supra), which related to the statutory office of county commissioner, and did not involve election of a judge of the superior court.

This decision does not bring about any practical difficulty, even if such could justify departure from the constitution. All that

is required to bring about a change of incumbents is an authorized general election at which members of the General Assembly are elected at a time authorized by the constitution and qualification of a successor to the incumbent judge. The latter should then surrender the office, not because of any vacancy, but because under the mandate of the constitution his term of office has terminated by reason of election and qualification of his successor. It is urged that there is a hiatus in the constitution, in that it fails to provide for a situation like the present, where a judge-elect dies before he qualifies, and consequently the legislature was free to act. This is not so. True the judge-elect dies before he becomes judge, and thus passes out of the picture before he acquires a right; but the constitution takes care of that situation, as relates to the court and public, by the express provision that the judge incumbent continues to be judge "until his successor is qualified." Thus the court is at no time without a judge. It is also suggested that "vacancy" as employed in the constitution is one thing where authority of the Governor to appoint is involved, and a different thing where authority to elect is involved. That is not so. It is employed in the same sense as applied to both. The executive appointment to fill a vacancy is only "until the first day of January after the general election held next after the expiration of thirty days from the time such vacancy occurs, at which election a successor for the unexpired term shall be elected." Thus the appointment and election are predicated on the selfsame vacancy. The electorate could no more elect Mitchell where there was no vacancy than could the Governor appoint Ingram where there was no vacancy. The statute of 1937, supra, could not on account of the provisions of the constitution make it different, nor did it purport to do so, as already above pointed out. The judge did not err in sustaining the demurrer and dismissing the petition.

HUTCHESON, Justice. I agree with the Chief Justice and Justice Atkinson that the judgment should be affirmed, but not with all that is said in the opinion of the Chief Justice. I do not consider it proper for this court now to determine the duration of the period for which Judge Pittman will continue to serve as judge of the Cherokee Circuit; nor am I prepared now to hold that under the law he may continue in office until the end of the four-year term which began in January. The only question before this

court, the only controversy we are called upon to decide, is whether the plaintiff, Mitchell, is presently entitled to the office by virtue of the election of June, 1937. When this matter was before the court in *Pittman* v. *Ingram,* 184 *Ga.* 255 (190 S. E. 794), a majority of the court held that the then plaintiff, Ingram, was not entitled to the office. Ingram had been appointed by the Governor upon the idea that the office became vacant when, because of the death of the judge-elect, James A. McFarland, there was a failure of an elected judge to qualify at the beginning of the four-year term which started in January of this year. Much was said upon both sides of the question. The effect of the decision by this court, in which I did not concur, was that there was no vacancy in the office at the time of Ingram's appointment; otherwise the court should then have affirmed the judgment below, with the result that Ingram would have served as judge until the time fixed by the constitution for his successor elected by the people for the unexpired term to assume the duties of the office. Had the court so determined that case, the present confusion would have been avoided.

The ruling in *Pittman* v. *Ingram* may not be the "law of the case," which should control the present controversy between Mitchell and Pittman, but it is a decision by this court relating to the identical subject-matter now under consideration, which, if not an absolutely binding precedent, should at least be treated as highly persuasive. If there was no vacancy in the office of judge of the superior courts of the Cherokee Circuit in January, it seems altogether logical to say that there is none now, and that there was none when Mitchell was a candidate in June. As was said by Justice Atkinson in *Pittman* v. *Ingram,* the constitution is controlling here, as it is in every case where constitutional provisions or principles are involved. Before the amendment of 1897, superior-court judges were elected by the legislature for four-year terms. That amendment provided that the successors of the judges then in commission should be elected "by the electors entitled to vote for members of the General Assembly of the whole State, *at the general election held for such members,* next preceding the expiration of their respective terms." Code, § 2-3102. The terms of the judges begin on the first day of January after their election. Constitution, art. 6, sec. 3, par. 3 (Code, § 2-3103).

Every vacancy is filled by appointment of the Governor "until *the first day of January* after the general election held next after the expiration of thirty days from the time such vacancy occurs, *at which election a successor for the unexpired term shall be elected.*" Art. 6, sec. 3, par. 3 (Code, § 2-3103). It will thus be seen that the constitution definitely fixes the time at which elected judges take office, no matter whether the election be a regular one for a full term or a special one for an unexpired term. The time fixed is January first following the election. There is no provision of the constitution whereby one elected to the office may assume its duties at any earlier date. Even if a statute on this subject would be valid, there is none. This being so, it must follow that Mitchell's present action is premature. If he was lawfully elected in June, he is not entitled to the office until January. If he was not lawfully elected in June, but if a judge may lawfully be elected at the election of November, 1938, the person then elected can not take office until the following January.

It could be very strongly argued that the situation in the Cherokee Circuit is such as to create an unexpired term for which a judge may be elected at the proper time. Should it be so held, speaking for myself alone, I should be strongly inclined to the view that the proper time for electing a judge for the unexpired term will be in November, 1938, when "members of the General Assembly for the whole State" are elected. The amendment of 1897 so fixes the time for electing judges for regular terms; and it would seem a strained construction to hold that the amendment contemplates one general election in one paragraph and another general election in another paragraph. The June general election is not a general election "for members of the General Assembly of the whole State," within the meaning of the first paragraph of the constitutional amendment of 1897; nor would it seem that the June election is the general election contemplated by the second paragraph of that amendment. However, none of these questions is now before the court. As already stated, the only question we have for determination is whether the plaintiff is presently entitled to the office. This is the only question he could present, or upon which he is entitled to invoke a ruling from this court; and I think we should so limit our ruling. The question whether he may have a right to the office in January, 1938, may

never arise; or if it does arise, the circumstances may be such as to present a controversy altogether different from that now presented. We should not ignore the possibility of death, of a change in the attitude of the parties, or even the possibility of the legislature meeting and abolishing the Cherokee Circuit, or rearranging the circuits, so as to eliminate either or both of the present claimants. There is even a more remote possibility of the General Assembly meeting between now and January first, proposing a constitutional amendment on the subject, and providing for its ratification at another general election, which we have held may be called at the will of that body. With respect to any situation which may arise on January 1, 1940, it is even plainer that no adjudication should now be made. Since it seems clear to me that any claim Mitchell may have by virtue of the June election can not now be asserted, I think the court below properly declined to seat him, and that the judgment of the trial court should be affirmed.

BELL, JENKINS, and GRICE, Justices. We are unable to agree to the opinion as prepared for the court by the learned Chief Justice, or to either of those submitted respectively by Presiding Justice Atkinson and Justice Hutcheson. We will first rehearse the facts briefly, and then state what we think is a correct solution of the case. Claude C. Pittman was elected judge of the superior courts of the Cherokee Circuit in November, 1932, for the regular term of four years beginning January 1, 1933, and ending December 31, 1936, and until his successor is qualified. In the general election held in November, 1936, James A. McFarland was elected for the ensuing term beginning January 1, 1937. McFarland died on November 25, 1936, without having taken the oath of office and receiving a commission. Pittman continued to occupy the office and to discharge the duties thereof as one holding until his successor is qualified. On January 4, 1937, Honorable Eugene Talmadge, the Governor of Georgia, passed an order purporting to declare a vacancy and to appoint William A. Ingram to fill it. In a subsequent action between Ingram and Pittman, it was held in effect by this court, two Justices dissenting, that the facts did not create a vacancy authorizing an appointment by the Governor, and that Pittman was entitled to retain the office until his successor is qualified. *Pittman* v. *Ingram*, 184 *Ga.* 255 (190

S. E. 794). In an election held on June 8, 1937, pursuant to an act of the General Assembly approved February 24, 1937 (Ga. L. 1937, p. 712), John C. Mitchell was elected as judge of the superior courts of the Cherokee Circuit for the remainder of the four-year term which began on January 1, 1937. Mitchell took the oath of office, and was commissioned on June 12, 1937. He then demanded that Pittman relinquish the office to him; and this demand being refused, he filed against Pittman a petition for the writ of quo warranto for the purpose of recovering the office. His petition was dismissed on general demurrer, and he excepted. The facts touching the litigation between Ingram and Pittman are not shown in the instant record, but are included in this statement for the purpose of giving a complete and chronological account of the controversies regarding this office since the death of James A. McFarland. They are taken from the report in *Pittman* v. *Ingram,* supra, not by any process of judicial notice, but merely as we might refer to the facts of any other case which is cited as a precedent.

In the case at bar it is contended by Pittman: (1) That no vacancy existed in this office, and therefore the legislature was without authority to authorize an election as in the act of February 24, 1937, and this act if applied to such office would be unconstitutional. (2) That under the constitution of this State as construed in *Pittman* v. *Ingram,* supra, and other decisions, the term of this office is for the period of four years and until a successor is qualified, and that such tenure by Pittman can not be interrupted while it endures, by either the Governor or the legislature. (3) That the act of February 24, 1937, is by its terms inapplicable to the office of the judge of the superior courts of the Cherokee Circuit, under the facts of this case. These questions were raised by the demurrer filed by Pittman to the suit of Mitchell, and are stated here substantially as they are expressed in the brief of counsel.

It is our opinion that the election of June 8, 1937, was a valid election as applied to this office, and that John C. Mitchell, the person elected therein, comes as a successor lawfully chosen and qualified, thus terminating the hold-over tenure of Pittman which has existed since January 1, 1937. The constitution of this State provides as follows: "There shall be a judge of the superior

courts for each judicial circuit, whose term of office shall be four years, and until his successor is qualified." Art. 6, sec. 3, par. 1 (Code, § 2-3101). "The successors to the present and subsequent incumbents shall be elected by the electors entitled to vote for members of the General Assembly of the whole State, at the general election held for such members, next preceding the expiration of their respective terms." Art. 6, sec. 3, par. 2 (Code, § 2-3102). "The terms of the judges to be elected under the constitution, except to fill vacancies, shall begin on the first day of January after their elections. Every vacancy occasioned by death, resignation, or other causes shall be filled by appointment of the Governor until the first day of January after the general election held next after the expiration of thirty days from the time such vacancy occurs, at which election a successor for the unexpired term shall be elected." Art. 6, sec. 3, par. 3 (Code, § 2-3103). The act of February 24, 1937, provided for a State-wide general election, to be held biennially on Tuesday after the first Monday in June, beginning in the year 1937, "in which vacancies shall be filled in any and all State and county offices, which vacancies may have occurred by reason of the death or resignation of the incumbent or nominee therefor, or otherwise, since the last preceding general election." As stated in *Pittman* v. *Ingram,* supra, the provisions of the constitution as quoted above constitute all of its provisions "as to selection and tenure of office of judges of the superior courts." Are they so complete and exhaustive in relation to the subjects dealt with as to prevent a true application of the act of 1937 to the facts of this case?

The first of the provisions quoted provides for a definite term of four years, plus a contingent term of indefinite duration until a successor of the regular incumbent is qualified. In *Pittman* v. *Ingram,* supra, it was held that the word "successor" as used in this clause means a successor elected by the people. While it has been said that such additional tenure after the regular term is just as much a part of the incumbent's term as the antecedent fixed term, it is yet different in character, being indefinite in extent and conditional in quality. *Shackelford* v. *West,* 138 *Ga.* 159, 162 (supra); *Crovatt* v. *Mason,* 101 *Ga.* 246 (28 S. E. 891); *McCleskey* v. *Zimmer,* 144 *Ga.* 834 (88 S. E. 188); *Rowe* v. *Tuck,* 149 *Ga.* 88 (99 S. E. 303, 5 A. L. R. 113); 33 C. J. 940-

943, §§ 33-40. Paragraph 2 as quoted above, providing for the election of judges in the next general election held for members of the General Assembly *next preceding the expiration of the terms of such judges,* manifestly refers to the regular four-year terms, and not to contingent or hold-over periods. This provision merely establishes a system of quadrennial elections for the regular full terms, and refers to such elections only. It follows that this paragraph could never apply to the facts of the present case, for the reason that the regular four-year term of Claude C. Pittman expired on December 31, 1936, and the only general election for members of the General Assembly which could ever be held next preceding the expiration of that term was the election of November, 1936, at which James A. McFarland was elected. There can never be another election in pursuance of this provision for the purpose of electing a successor to Pittman as the incumbent of the term of four years which expired on December 31, 1936. This paragraph does not provide for any such contingency as appears from the present record, nor does it contain any language to prevent action by the General Assembly covering such contingency. Since this paragraph is inapplicable in its entirety to the situation here under consideration, it is inapplicable in every part, including the part as to election of successors at the same time as members of the General Assembly are elected. Paragraph 3 as quoted above is equally inapplicable to the facts of the instant case. It provides in effect that where a vacancy has been filled by appointment of the Governor, the appointee shall hold the office until the first day of January after the general election held next after the expiration of thirty days from the time such vacancy occurs, at which election a successor for the unexpired term shall be elected. In *Pittman* v. *Ingram,* supra, it appeared that the Governor did make an appointment, but it was held that the appointment was invalid. If the appointment had been a valid one, this paragraph of the constitution would have defined the tenure of the appointee, and would have provided for the election of a successor for the unexpired term. Such, however, are not the facts of the present case, and this clause of the constitution has no application. Nor does it contain language to prevent legislation governing such facts. Such being the evident meaning of the constitutional provisions, is it not true that Pittman would continue to hold the office for

the remainder of his life unless there is some other law under which a successor may be chosen?

When the quoted provisions of the constitution, which are the entire provisions on the subject, are carefully analyzed, it is plain that none of them can be construed as providing within themselves for an election in the present situation; nor on the other hand do they contain anything to prohibit the legislature from providing therefor. In other words, the constitution has left a definite hiatus, "as to selection and tenure of office of judges of the superior courts," which could be supplied by the General Assembly under its power to pass any law consistent with this constitution and not repugnant to the Federal constitution. Code, § 2-1822. We refer to hiatus, not in the sense that there was no one to function as judge until a successor qualified, but in the sense that no provision is made by the constitution for electing a successor. The act of February 24, 1937, contains nothing which is inconsistent with the foregoing provisions, and there are no other constitutional reasons why it may not be applied to the facts of this case. This brings us to the question whether the act should be reasonably construed as applying by its terms to the facts of this record, and therefore as covering a field not inhibited by the constitution. The act provides for a general election to be held at times specified, for the purpose of filling vacancies in any and all State and county offices which "may have occurred by reason of the death or resignation of the incumbent or nominee therefor, or otherwise, since the last preceding general election." To our minds it would have been difficult to describe the existing status of this office in general terms more suitable, so far as this language refers to death of a "nominee." James A. McFarland had been elected as judge, but had died without qualifying. He was therefore the nominee of the people for that office for the term beginning January 1, 1937, in that he was the person named or designated by the electors therefor. See Webster's New International Dictionary, the word "nominee." Clearly the legislature did not employ this word in the sense of a party nominee, because the death or resignation of a mere nominee of a political party would not cause a vacancy either in office or in term. Any such construction would result in an absurdity, and it is not presumed that such a result was intended by the lawmaking body. *Bunger* v. *State*, 146 *Ga.*

672 (2) (92 S. E. 72) ; *Board of Tax-Assessors of Decatur County* v. *Catledge,* 173 *Ga.* 656 (160 S. E. 909) ; *State Revenue Commission* v. *Bradley Co.,* 178 *Ga.* 215 (172 S. E. 558). So, in the instant case, the word "nominee" as used in this statute is reasonably construed as describing the judge-elect who died before entering upon the term of office for which he was elected and before qualifying. The phrase "since the last preceding general election" obviously has reference to the general election in which such "incumbent or nominee was elected," and not to some other election which may have been the last general election before the June election to be held under the act.

In *Pittman* v. *Ingram,* supra, it was said, "the constitutional design to fill the offices of judges of the superior courts by vote of the qualified electors must be carried in mind. It is distinctive from executive function, and manifests a policy to select the judges by the electorate. This object should also be borne in mind." Since it is thus the constitutional policy that judges should be selected by the people, it follows as a corollary that such policy of selection should be exercised at the first opportunity provided by law. It was also said in that decision that the "power of executive appointment is for an emergency, and can be exercised only in case of a vacancy. It can not be exercised to be effective while a duly commissioned incumbent is in office." But it is earnestly contended by counsel for the defendant that this statute did not authorize the election of a judge of the Cherokee Circuit on June 8, 1937, for the reason, as held in *Pittman* v. *Ingram,* supra, that there was no vacancy in this office at the time of such election. As pointed out in that decision, there are several classes of vacancies. There may be a vacancy *in office* or a vacancy *in term.* The former creates an emergency; the latter does not. In other words, in order to warrant an appointment by the Governor, there must be a vacancy in the sense that the office is actually unoccupied by any person authorized to discharge the duties thereof; whereas there may be a vacancy in term, as where the regular term has not been filled in the manner contemplated by law, although a prior incumbent may retain the office and discharge the duties thereof as a hold-over; and in the latter case, as related to this office, there is a vacancy which may be filled by an election pursuant to law, even though there was no such vacancy

as to authorize an appointment by the Governor. "An office is not vacant so long as it is supplied in the manner provided by the constitution or law with an incumbent who is legally qualified -to exercise the powers and perform the duties which pertain to it; and, conversely, it is vacant in the eye of the law when it is not occupied by a legally qualified incumbent, who has a lawful right to continue therein until the happening of some future event. A distinction may be drawn between a vacancy in office and a vacancy in term. By a vacancy in an office is usually meant that the office is empty, and that it is without an incumbent who has a right to exercise its functions and to take its fees or emoluments. . . A vacancy may occur so as to permit the appointing or electing power to appoint or elect some person to the office, although the incumbent continues physically to occupy it, and has the right to do so until the qualification of his successor. The power to fill vacancies in elective offices is sometimes vested in an appointing officer. In such cases and for the purpose of making a temporary appointment to fill vacancies, something more is required than the mere absence of any incumbent in the office. The mere expiration of the term of the incumbent does not create a vacancy which can be filled by such appointment. Especially when it is provided that there shall be a new election in the case of a tie vote, the failure of an election by reason of the fact that the opposing candidates have an equal number of votes will not constitute a vacancy to be filled by appointment for the residue of the term." 22 R. C. L. 437-8, §§ 91-92, quoted in special concurrence by Mr. Justice Gilbert in *Lee* v. *Byrd,* 169 *Ga.* 622, 626 (151 S. E. 28).

The act of February 24, 1937, so far as it refers to death of "nominee" clearly describes a vacancy *in term,* and provides for supplying it by an election by the people. Properly construed in the light of the facts, the decision in *Pittman* v. *Ingram,* supra, simply held that there was no such vacancy as to authorize an appointment by the Governor. This was the only question then before the court, and a decision of more would have been without authority and obiter. Since no election was then under consideration, that decision did not hold, and could not have held, that the same facts would not constitute such a vacancy as might be filled by an election by the people, pursuant to law. See, in this connection, *McCloskey* v. *Zimmer,* 144 *Ga.* 834 (supra); *Cason*

v. *Harn,* 161 *Ga.* 366 (131 S. E. 88). The election of John C. Mitchell on June 8, 1937, was not invalid upon the ground that there was no such vacancy as to authorize *an election.* Whether or not the constitution demands that in all elections of judges of the superior courts the electors must be the same as those qualified to vote for members of the General Assembly, any such requirement is met by the act of February 24, 1937, in that in section 1 the June general election shall be held in the same manner and "in accordance with all rules and regulations in existence in holding the November general election,"—which is the election in which members of the General Assembly are chosen. *Aycock* v. *Boykin,* 184 *Ga.* 709 (supra). Nor is there any merit in the contention that the act of 1937 should not be retroactively applied to the facts of this case. An incumbent in a public office has no such vested right as will entitle him to complain of legislation affecting the office, upon the ground that it is retroactive, where no other right under the constitution is violated. *Collins* v. *Russell,* 107 *Ga.* 423 (33 S. E. 444) ; *Gray* v. *McLendon,* 134 *Ga.* 224 (7), 250 (67 S. E. 859) ; *City of Darien* v. *Clancy,* 167 *Ga.* 848 (146 S. E. 767) ; *Mills* v. *Geer,* 111 *Ga.* 275, 280 (36 S. E. 673; 52 L. R. A. 934).

While we have not discussed the contentions of the defendant in error numerically or separately as they were stated by counsel, they have all been considered; and on the facts stated in the petition it is our opinion that the plaintiff, John C. Mitchell, is entitled to the office in question, and that the court erred in sustaining the demurrer and dismissing the petition.